```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MATTHEW PAUL GOULD,                              MEMORANDUM
                    Plaintiff,                   AND ORDER
        - against -
MORAN TOWING CORP.,                              12-CV-5046 (JO)
                    Defendant.
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

Plaintiff Matthew Paul Gould ("Gould") has asserted a claim under the Jones Act, 36 U.S.C. § 30104, *et seq.*, seeking damages arising from injuries he claims to have sustained while working as a tankerman on a vessel owned and operated by his employer, defendant Moran Towing Corporation ("Moran"). Docket Entry ("DE") 29 (Complaint). On July 22, 2013, Moran filed a Third Party Complaint seeking indemnification from Select Medical Corporation ("Select") on the ground that the latter company, which Moran engaged to provide physical therapy services to Gould, acted negligently and thereby exacerbated Gould's injuries. DE 37 (Third Party Complaint). Select now moves to dismiss the Third Party Complaint on the ground that it is not subject to this court's jurisdiction. DE 42 (Motion to Dismiss). For the reasons set forth below, I agree and therefore grant the motion.

I.   Background

  A.   Facts

Gould alleges that he sustained the injuries at issue on November 14, 2010, while working on Moran's barge. Third Party Complaint ¶ 10. He later returned to his home in Florida, where a doctor diagnosed his injury as a rotator cuff tear, performed surgery to repair it, and prescribed a course of physical therapy. *Id.* ¶¶ 11-12. Acting pursuant to its obligations as a maritime employer, Moran arranged for Gould to receive physical therapy at a facility in Pensacola called Select Physical Therapy

Pine Forest ("Pine Forest"). *Id.* ¶¶ 7, 13.[1] Pine Forest provided physical therapy to Gould from April 19 through September 9, 2011. *Id.* ¶ 15. However, Moran alleges that Pine Forest was negligent, and that as a result Gould re-injured his rotator cuff and required further surgery; Gould now asserts that in the aftermath of his second injury and surgery, he cannot return to his former employment. *Id.* ¶¶ 17-18. Moran alleges that an appropriate course of physical therapy would have allowed Gould to resume his work as a tankerman. *Id.* ¶ 19.

In seeking to establish personal jurisdiction over Select, Moran makes the following allegations, all of which I assume to be true for purposes of the instant motion. Select is a Delaware corporation. *Id.* ¶ 7. Through its Select Medical Outpatient Division, which operates the Pine Forest facility in Pensacola, *see id.*, "Select derives substantial revenue from interstate commerce and advertises its ability to and provides [sic] services to patients in New York through its website." *Id.* ¶ 9.[2] When Moran set out to arrange Gould's physical therapy, its agent in New York, Universal Coordinating Care, LLC ("Universal"), entered into a contract for such services with Pine Forest. *Id.* ¶ 13. Pine Forest provided reports about Gould's treatment to Universal, which "administered and monitored" the therapy services in New York. *Id.* ¶¶ 14, 15. Moran paid Select for the therapy. *Id.* ¶ 14.

---

[1] Select contends Pine Forest is a "d/b/a designation" of Gulf Breeze Physical Therapy, Inc. ("Gulf Breeze"). DE 42-3 (Select's memorandum of law) at 6. It adds that Gulf Breeze, a Florida corporation, is not a direct subsidiary of Select or directly controlled by the latter company, but is instead separated from Select by three levels of corporate ownership and control; that is, Gulf Breeze is a wholly owned subsidiary of one corporation, which is a wholly owned subsidiary of another, which in turn is a wholly owned subsidiary of Select. *See id.* at 3; DE 42-2 (affidavit of Select official) ¶ 7. Moran does not appear to dispute that claim. *See* DE 44-9 (Moran's memorandum of law) ("Opp.") at 2. As explained below, however, I grant the instant motion for reasons unrelated to the nature of the corporate relationship between Select and Pine Forest, and would reach the same result even if the parties agreed that Pine Forest was an alter ego of Select.

[2] Moran's phrasing creates some ambiguity as to whether Select's website is one that solicits patients at unspecified locations and is merely accessible from New York, or instead solicits patients who are themselves in New York. That ambiguity does not affect my analysis.

2

B.       Proceedings

Gould filed his Complaint against Moran on October 8, 2012, and later amended it on May 9, 2013. DE 1; DE 29. Moran answered on November 9, 2012. DE 9. On April 1, 2013, Moran moved to transfer venue of the case to the Northern District of Florida. DE 16. In explaining why such a transfer would be in the interest of justice, Moran wrote that "Select cannot be sued in this District." DE 16-5 (memorandum of law in support of motion to transfer) at 3; *see also id.* at 6-7 (arguing that Moran's claim that Pine Forest's negligence "exacerbated plaintiff's injury cannot be [tried] in this Court"); *id.* at 8 (contending that a joint trial of Gould's personal injury claim and Moran's negligence claim is "only possible in the Northern District of Florida"). The court heard argument and denied the motion on April 29, 2013. DE 26.[3]

Thereafter, the parties unanimously consented to refer the case to me for all proceedings including entry of a final judgment, and Moran then sought and received leave to file its Third Party Complaint against Select (which likewise consented to have a magistrate handle the case). *See* DE 33; DE 36; DE 47; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Moran filed the pleading on July 22, 2013. DE 37. Select then filed the instant motion on September 4, 2013, and the parties completed the briefing on October 11, 2013. *See* DE 42; DE 48. No party has requested oral argument.

II.      Discussion

As Moran's claim against Select rests on diversity jurisdiction, New York law determines the issue of personal jurisdiction. *Cargill, Inc. v. Sabine Trading & Shipping Co., Inc.*, 756 F.2d 224, 228 (2d Cir. 1985). Moran, as the party asserting the claim, bears the burden of establishing that Select is subject to

---

[3] The court did not rule on the question of personal jurisdiction in denying the motion to transfer. At oral argument on the motion, the court did appear to assume that it would lack such jurisdiction, a proposition with which Gould's counsel agreed and Moran's counsel voiced no disagreement. *See* DE 49 (transcript) at 9. Neither the parties' arguments on the transfer motion nor the court's resolution of it is dispositive of the instant motion.

3

this court's personal jurisdiction. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). In opposing Select's pre-discovery motion to dismiss, Moran may rely on "legally sufficient allegations of jurisdiction[,]" *id.* (citations omitted), and is entitled to have the court resolve any pertinent factual disputes in its favor. *Alterseekers, Inc. v. BrandForce SF, LLC*, 2013 WL 5236533, at *4 (E.D.N.Y. Sept. 16, 2013).

Moran relies on a provision of New York's long-arm statute that extends personal jurisdiction over a non-domiciliary that "commits a tortious act without the state causing injury to person or property within the state … if he … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce …." N.Y. C.P.L.R. 302(a)(3)(ii) (cited in Opp. at 6). To prevail on that jurisdictional theory, Moran must establish that:

> (1) the defendant [*i.e.*, Select] committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce ….

*Penguin Grp. (USA) Inc. v Am. Buddha*, 16 N.Y.3d 295, 302 (2011).

To fit its claim against Select into that framework, Moran characterizes the injuries for which it seeks redress as an increase in its liability to Gould as well as the loss of Gould's services as an employee, each of which "flow[s] from the negligent medical care" at issue and each of which "will occur in New York." Opp. at 8. That view of the claim does not accord with controlling law, however, because for purposes of the provision of New York's long-arm statute upon which Moran relies, "[t]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt …." *Hermann v. Sharon Hosp., Inc.*, 522 N.Y.S.2d 581, 583 (App. Div. 1987). The "original event which caused the injury" Moran describes may well produce

4

"resultant damages" that will be "subsequently felt" in New York, but the event itself – the allegedly negligent physical therapy that Pine Forest provided to Gould, resulting in the exacerbation of his torn rotator cuff – occurred in Florida. *See id.* (holding that the same provision of the long-arm statute at issue here is inapplicable where, as here, the plaintiff was physically injured as a result of negligent medical care provided outside of New York, leading to subsequent effects within New York).

Moran also purports to rely on *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002) (cited in Opp. at 8-9). That case, however, involved torts of a commercial nature, and the court had, in an earlier opinion in the same case addressing the pertinent long-arm statute provision, explicitly limited its holding to instances of "fraud or breach of fiduciary duty committed in another state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791-92 (2d Cir. 1999) (discussing the holding in *Hermann* before turning to cases with facts "far more analogous" to those presented). The court drew that distinction for a good reason that applies with equal force here: Whereas a commercial tort involving fraud or misrepresentation may not cause injury immediately or in the state in which it was committed, the first effect of a tort involving physical injury is immediately visited upon the body of the injured person. *See id.* at 792 (holding that for commercial torts involving fraud or breach of fiduciary duty, "the critical question is thus where the first effect of the tort was located that ultimately produced the final economic injury"). Accordingly, the holding in *Bank Brussels Lambert* does not alter the jurisdictional analysis here.

The decision in *DiStefano v. Carozzi N. Am. Corp.*, 286 F.3d 81 (2d Cir. 2001) (cited in Opp. at 9), also provides no support for Moran's position. DiStefano complained of a decision made in New Jersey to terminate his employment – but as the court noted, he had performed his work in New York, and therefore experienced the immediate effect of the termination decision in New York, thus

5

satisfying the latter state's long-arm statute. *Id.* at 85. Explaining its decision, the court reasoned as follows:

> "Th[e] 'original event' is … generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." … We have previously held in applying N.Y. C.P.L.R. § 302(a)(3) that the "original event" occurs "where the first effect of the tort … that ultimately produced the final economic injury" is located.

*Id.* at 85-86 (quoting *Bank Brussels Lambert*, 171 F.3d at 791, 792 (quoting *Hermann*)). Indeed, because the *DiStefano* opinion relies explicitly on the earlier decision in *Bank Brussels Lambert*, and in turn on *Hermann*, it manifestly does no more than the latter decisions to support Moran's jurisdictional theory – and as explained above, those cases do not support that theory at all. I therefore conclude that Moran has failed to plead an injury to a person or property in New York, and as a result cannot establish personal jurisdiction over Select.

III.     Conclusion

For the reasons set forth above, I grant Select Medical Corporation's motion to dismiss the Third Party Complaint.

SO ORDERED.

Dated:  Brooklyn, New York
        April 3, 2014

                                                    _____/s/_____
                                                    JAMES ORENSTEIN
                                                    U.S. Magistrate Judge